## In re FOX.

## In re NOONE.
### Nos. 27648–Y, 27772–Y.

District Court, S. D. California, Central Division.
Aug. 24, 1936.

David Schwartz, of Los Angeles, Cal , for bankrupts.

Francis B. Cobb, of Los Angeles, Cal , for trustee in bankruptcy.

YANKWICH, District Judge.

Upon a voluntary petition filed on March 31, 1936, Harry Fox was adjudicated a bankrupt. In his schedules, accompanying the petition, he listed as an asset a 1929 Buick sedan, for which he claimed exemption, under the laws of California. Bernard T. Noone was adjudged a bankrupt on April 23, 1936, upon a voluntary petition filed that day. In his schedules, he listed as an asset a 1930 Pontiac coupé automobile.

By appraisals had in the proceedings, the value of the Fox automobile was set at $135, and that of the Noone automobile at $95. The trustee disallowed the exemptions. The bankrupts excepted to the trustee's report. Upon a hearing before the referee, the claimed exemptions were disallowed. A review of these decisions is asked. As the same fundamental question is involved in both matters, they have been argued together. They will be so treated here.

The referee found, as a fact, that the automobiles in both cases were owned prior to September 15, 1935, and that, *prior to that date,* the bankrupts had incurred obligations which are scheduled as liabilities in their respective schedules. The findings of the referee on this subject cannot be disturbed. Weisstein Bros. & Survol v. Laugharn (C.C.A.9, 1936) 84 F.(2d) 419, 420. More, the evidence which we have examined warrants, despite certain contradictions, the conclusion that the debts were incurred prior to September 15, 1935.

That date is the effective date of section 690.24 of the Code of Civil Procedure of California, added by the Legislature of 1935 (California Statutes 1935, c. 723, p. 1971).

The validity of the order of the referee depends upon the validity of this section, which exempts from execution or attachment, "one motor vehicle of a value not exceeding one hundred dollars."

The referee reached the conclusion that this provision is unconstitutional, in so far as it applies to debts incurred before it went into effect.

That conclusion must be sustained.

It is an accepted constitutional doctrine in the courts of the United States that statutes establishing an exemption, or increasing it materially, are unconstitutional in so far as they apply to debts incurred prior to the establishment or increase of the exemption. 25 Cor.Jur. 14; 12 Cor.Jur. 1075, 1076.

The basis of the doctrine is that the obligation of existing contracts is impaired by laws which extend materially the amount and character of the debtor's exemption. This upon the ground stated Mr. Chief Justice Marshall in Sturges v. Crowninshield (1819) 4 Wheat. 122, 198, 4 L.Ed. 529: "But it is not true that the parties have in view only the property in possession when the contract is formed, or that its obligation does not extend to future acquisitions. Industry, talents and integrity, constitute a fund which is as confidently trusted as property itself. Future acquisitions are, therefore, liable for contracts; and to release them from this liability impairs their obligation." This statement is quoted with approval by Mr. Chief Justice Hughes in the latest decision on the subject of exemption, W. B. Worthen Co. v. Thomas (1934) 292 U.S. 426, 432, 54 S.Ct. 816, 818, 78 L.Ed. 1344, 93 A.L.R. 173. In that case, the court denied validity to an enactment of the Legislature of Arkansas exempting from liability or seizure under judicial process of any court all moneys paid or payable to a resident of Arkansas as the insured or beneficiary under any life, sick, accident, or disability policy. In reaching this conclusion, the Supreme Court followed its earlier decisions, to which we shall now refer.

In view of the argument that these decisions no longer correspond to the present conception of the police power of the state (see In re Durband [D.C.Iowa, 1934] 8 F. Supp. 63), it is significant to note that this very contention was made in this case upon the basis of the decision in Home Building & Loan Association v. Blaisdell (1934) 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481. The court not only cited but gave full effect to its prior decisions, and in repudiating the contention, said: "But we also held [in Home Building & Loan Ass'n v. Blaisdell] that this essential reserved power of the State must be construed in harmony with the fair intent of the constitutional limitation, and that this principle precluded a construction which would permit the State to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them."

There is a tendency upon the part of courts to broaden the concept of police

power. They have allowed modification of abstract ideas concerning property and contractual rights. They, nevertheless, have refused to depart from the principle that exemptions of property from execution, if applied to debts existing before the exemptions were established or increased, constitute a violation of the rights of those who contracted with the debtors upon the basis of the property then owned by him and his future accumulations. A brief review of the decisions to which reference is made in W. B. Worthen Co. v. Thomas, supra, will suffice.

In Bronson v. Kinzie (1843) 1 How. 311, 315, 11 L.Ed. 143, the court denied validity to a statute of Illinois which extended the equity of redemption after a sale under a court decree for a period of twelve months, in so far as it applied to mortgages executed prior to the enactment. Mr. Chief Justice Taney made this statement, which was obiter and which has been the source of a good deal of misunderstanding: "For, undoubtedly, a state may regulate at pleasure the modes of proceeding in its courts in relation to past contracts as well as future. It may, for example, shorten the period of time within which claims shall be barred by the statute of limitations. It may, if it thinks proper, direct that the necessary implements of agriculture, or the tools of the mechanic, or articles of necessity in household furniture, shall, like wearing apparel, not be liable to execution on judgments. Regulations of this description have always been considered, in every civilized community, as properly belonging to the remedy, to be exercised or not by every sovereignty, according to its own views of policy and humanity. It must reside in every state to enable it to secure its citizens from unjust and harassing litigation, and to protect them in those pursuits which are necessary to the existence and well-being of every community."

In Gunn v. Barry (1872) 15 Wall. 610, 623, 21 L.Ed. 212, the court denied validity to a provision in the Constitution of Georgia allowing an absolute exemption on real property up to the value of $2,000 and personal property up to the value of $1,000. The court said: "The legal remedies for the enforcement of a contract, which belong to it at the time and place where it is made, are a part of its obligation. A State may change them, provided the change involve no impairment

of a substantial right. If the provision of the constitution, or the legislative act of a State, fall within the category last mentioned, they are to that extent utterly void. They are, for all the purposes of the contract which they impair, as if they had never existed. The constitutional provision and statute here in question, are clearly within that category, and are, therefore, void." See, also, Kener v. La Grange Mills (1913) 231 U.S. 215, 34 S. Ct. 83, 58 L.Ed. 189.

A similar provision in the Constitution of North Carolina exempting from sale under execution for "any debt" real property of the value of $1,000 and personal property of the value of $500, in so far as it applied to contracts existing before the adoption of the constitution, was declared invalid, in Edwards v. Kearzey (1877) 96 U.S. 595, 24 L.Ed. 793. Mr. Justice Swayne distinguished and repudiated the broad language of Mr. Chief Justice Taney in Bronson v. Kinzie. He gave the following as the basis for the decision: "The remedy subsisting in a State when and where a contract is made, and is to be performed, is a part of its obligation; and any subsequent law of the State, which so affects that remedy as substantially to impair and lessen the value of the contract, is forbidden by the Constitution of the United States, and, therefore, void."

In Bank of Minden v. Clement (1921) 256 U.S. 126, 41 S.Ct. 408, 65 L.Ed. 857, the court denied validity to a Louisiana statute which exempted from debts of the assured the avails of insurance upon his life when payable to his estate, saying: "When the deceased took out the policies of insurance upon his life they became his property, subject to claims of his creditors."

Among the lower court cases which accord are: The Queen (D.C.Cal.1899) 93 F. 834, 837; In re Bonvillain (D.C.La. 1916) 232 F. 370; In re Lang (D.C.Pa. 1927) 20 F.(2d) 236; In re Messinger (C. C.A.2, 1928) 29 F.(2d) 158, 68 A.L.R. 1205; In re Marx (D.C.Ark.1933) 5 F. Supp. 954; In re Rechtman (D.C.N.Y. 1935) 11 F.Supp. 347.

The Queen, supra, arose under a California statute which exempted absolutely from execution the wages of seamen in an amount not exceeding $100. Ruling that this statute as applied to contracts entered into before its enactment would be unconstitutional, District Judge De Haven

said: "There can be no doubt that a law absolutely exempting seamen's wages in an amount not exceeding $100, as applied to previous contracts made with seamen, at a time when no such exemption is allowed, would materially lessen and impair the obligation of such contracts."

We have analyzed the cases on the subject because of the insistence of counsel for the bankrupt that the exemption under consideration here cannot be considered substantial. When the foregoing cases refer to exemptions which lack validity as being "substantial" or "material," they do not lay down a definite criterion by which the invalidity is to be determined. Rather do they take into consideration the fact adverted to by Mr. Justice Swayne, in Edwards v. Kearzey, supra, in criticizing the dictum of Mr. Chief Justice Taney in Bronson v. Kinzie, supra, that the law does not concern itself with trifles. But any withdrawal of substantial property is not effective against creditors who entered into contracts prior to the enactment of the law permitting the withdrawal.

It cannot be said that the exemption of an automobile to the value of $100 is not a substantial or material withdrawal. It is as substantial as the withdrawal of wages in that amount. In fact, there might be a greater justification for recognizing the withdrawal of wages to that amount from execution upon the ground that the seaman and his family might need the amount to live on, and that this might be the only source from which their livelihood might come. But the withdrawal of an automobile of the value of $100 without any requirement that it be one used or needed in business cannot be justified. Despite the widespread use of the automobile, it is not *necessarily* a common necessity. Millions of persons use other methods of transportation. Millions of men, employed in gainful occupations, in large cities and in the country, do not use an automobile for business purposes. If it be argued that an automobile may be considered a "pleasure" vehicle, the answer is that one who resorts to bankruptcy, and who may have no other asset, is not entitled, on any principle of police power or humane consideration, to indulge in such pleasure at the expense of his creditors.

It is true that statutes dealing with exemptions are liberally construed. Dean v. Shephard (C.C.A.9, 1928) 26 F.(2d) 460.

But no liberality of construction can overcome a constitutional infirmity, declared by our highest courts.

It follows that section 690.24 of the California Code of Civil Procedure is invalid in so far as it applies to preexisting debts. The decision of the referee denying its validity and application to the facts in these cases was, therefore, right.

The decision of the referee, so far as it applies to the Fox case, can also be sustained upon the additional ground that the value of the automobile was in excess of $100.

The language of the section specifically exempts *the automobile* up to a value of $100. It does not exempt *the value* in the automobile. Counsel for the bankrupt would have us interpret the section as though it exempted $100 "worth of" automobile, in any automobile no matter what its value. In other words, they would have us interpret the section as though it exempted the debtor's equity to the extent of $100. To do so would mean to read into the section a meaning other than that which it has. The idea behind the exemption is that the automobile up to a certain value is a necessity to the average person. Otherwise the exemption could not be defended, even as to subsequent contracts. So that the very wording of the section and its rationale speak against an interpretation that would allow us to give validity to an exemption up to $100 in the case of an automobile having a greater value. Aiding this interpretation is the fact that whenever our Legislature has sought to protect not only the interest of a debtor in property up to a certain amount but also the proceeds of the sale of such property, or the value of his equity in it, it has made specific provision therefor. Thus, for instance, under sections 1256 and 1257 of the Civil Code of California the money derived from the proceeds of the sale of a homestead is specifically entitled to the same protection against legal process as the homestead itself. The surplus only is subject to levy. See White v. Horton (1908) 154 Cal. 103, 97 P. 70, 18 L.R.A. (N.S.) 490.

Under section 690.19 of the Code of Civil Procedure of California, as added by St.1935, p. 1970, the exemption of moneys or benefits growing out of life insurance, if the annual premiums do not exceed $500, is retained as to moneys derived from a policy in which the annual premium exceeds

that amount. The exemption in such case exists as to an amount which bears the same proportions to the moneys and benefits accruing and growing out of the insurance that the $500 bears to the whole annual premiums paid. An attaching creditor may attach the excess. California U. S. Bond & Mortgage Corp. v. Grodzins, 139 Cal.App. 240, 34 P.(2d) 192. By analogy, the interest of a purchaser under a conditional contract of sale of personal property over and above the balance due may be levied upon by tendering to the seller the sum due. Whereupon the seller is substituted to the rights of the vendee. Code Civ.Proc.Cal. §§ 689a, 689b, 689c; Casady v. Fry (1931) 115 Cal.App.(Supp.) 777, 6 P.(2d) 1019.

█ In the absence of a provision of this character, it must be assumed that when the Legislature sought to exempt an automobile up to the value of $100, it meant to give to debtors the benefit of the use of the automobile not exceeding that value. It did not intend to protect their equity up to $100 without regard to the value of the automobile. Had the Legislature intended to protect debtors, not only in the use of an automobile up to the value of $100 but also in the proceeds of any sale or levy up to that value, it would have made provision similar to those to which we have referred, and made the exemption attach to the proceeds up to the maximum. It did not do so.

The order of the referee is affirmed in both cases.